UNITED STATES BANKRUPTCY COURT          **FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
In re:                             :
                                   :    Chapter 7
STRADA DESIGN ASSOCIATES, INC.,    :    Case No. 00-12344(SMB)
<u>et</u> <u>al.</u>,                         :
                                   :
                Debtors.           :
-----------------------------------X
WINICK & RICH, P.C. a/k/a WINICK & :
RICH, JEFFREY N. RICH, ALAN C.     :
WINICK, SUSAN G. ROSENTHAL, SCOTT  :
H. WYNER, ABRAHAM Y. SKOFF, DAVID  :
M. OLASOV, PAUL B. HAHN, MICHAEL G.:
KEATING, MICHAEL A. KARPEN, ROBERT :
J. SULLIVAN, and MICHAEL POLLACK,  :
                                   :
                Plaintiffs,        :    Adv. Proc. No. 04-4434
                                   :
        – against --               :
                                   :
STRADA DESIGN ASSOCIATES, INC.,    :
STRADA DESIGN OF PA, INC., and     :
RICHARD E. O'CONNELL as Trustee    :
of the estates of Strada Design    :
Associates, Inc. and Strada Design :
of PA, Inc.,                       :
                                   :
                Defendants.        :
-----------------------------------X


           **OPINION AND ORDER GRANTING PLAINTIFFS'
           MOTION FOR SUMMARY JUDGMENT AND DENYING
           THE DEBTORS' CROSS-MOTION FOR SUMMARY JUDGMENT**


**A P P E A R A N C E S:**

BROWN RAYSMAN MILLSTEIN FELDER
    & STEINER, LLP
Attorneys for Plaintiffs
900 Third Avenue
New York, New York 10022

        Bruce J. Zabarauskas, Esq.
            Of Counsel

BETANCOURT, VAN HEMMEN, GRECO & KENYON
Attorneys for Defendants
    Strada Design Associates, Inc.
    and Strada Design of PA, Inc.
46 Trinity Place
New York, New York 10006

        John Greco, Esq.
            Of Counsel


**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge:**

        The plaintiffs consist of the law firm of Winick & Rich, which

no longer engages in the practice of law, and several of its former

members (collectively, the "Plaintiffs" or the "Firm"). They

brought this adversary proceeding seeking a determination that

certain legal malpractice claims asserted against them by the

debtors in a complaint filed in state court (the "State Court

Complaint") are "property of the estate." They have now moved for

summary judgment, and the debtors, who are among the defendants,

have cross-moved for the same relief. For the reasons that follow,

the Plaintiffs' motion is granted and the debtors' motion is

denied.


                           **BACKGROUND**


**A. Introduction**

        The facts are undisputed with the <u>caveat</u> that the allegations

of malpractice are contested. Prior to bankruptcy, the debtors,


2

Strada Design Associates, Inc. ("Strada Associates") and Strada Design of PA, Inc. ("Strada/PA," and collectively with Strada Associates, the "Debtors") were primarily engaged in the design and development of showroom spaces. The sole shareholders of the Debtors are Robert Strada ("Robert") and Michelle Murphy Strada ("Michelle," and collectively with Robert, the "Stradas"). Robert or Robert and Michelle are also the sole shareholders of 25 Power Realty Corp., 31 Industrial Circle LLC, and M.A.R.S. Properties, Inc. (the "Affiliates").

By March 2000, Strada/PA was facing significant financial problems. Its revenues were declining, and an Alabama court had entered a judgment against it earlier in the month. (State Court Complaint, ¶¶ 21-22.)[1] On or about March 20, 2000, the Stradas sought advice from Jeffrey Rich, Esq., a member of the Firm, with the goal of "working out the debts, and preparing plans pursuant to which businesses could continue to operate in their areas of endeavors." (Id., at ¶¶ 22-23.) Rich advised the Stradas to put Strada/PA into chapter 7. (Id., at ¶ 24.)

At a second meeting, Robert provided Rich with a combined cash flow statement covering the Debtors' and the Affiliates. He

---

[1]    A copy of the State Court Complaint is attached as Exhibit L to the Plaintiffs' Motion for Summary Judgment and Incorporated Memorandum of Law, dated January 12, 2005 ("Plaintiffs' Motion")(ECF Doc. # 12.).

expressed the opinion that the businesses could be restructured with minimal disruption to their ongoing operations. (<u>Id.</u>, at ¶¶ 25-28.)   After reviewing the information, Rich recommended that Strada Associates also file a chapter 7 petition. (<u>Id.</u>, at ¶ 29.) Following this second meeting, the Stradas, the Debtors and the Affiliates retained the Firm. (<u>Id.</u>, at ¶ 33.)

Despite the Stradas' reservations about chapter 7, which they expressed to Rich on several occasions, (<u>see</u> <u>id.</u>, at ¶¶ 34-36), "Rich pressured the Stradas to follow the Chapter 7 route," (<u>id.</u>, at ¶ 39), and never explained the impact that the chapter 7 cases would have on the Stradas, the Debtors or the Affiliates. (<u>Id.</u>, at ¶ 40.)   As a consequence, the Debtors filed their chapter 7 cases on March 24, 2000, and the defendant Richard E. O'Connell became the trustee of both estates.   Rich signed the petitions, and the Firm continued to represent the Debtors in chapter 7.

## B.   The State Court Litigation

In November 2003, the Debtors, the Stradas and the Affiliates (collectively, the "State Court Plaintiffs") filed an action in New York Supreme Court, entitled <u>25 Power Drive Realty Corp., et al. v. Rich</u>, N.Y. Co. Index No. 109629/03, and on or about October 28, 2004, they filed a first amended complaint (<u>i.e.</u>, the State Court Complaint).   The State Court Plaintiffs sought at least $2.5

million in damages arising from legal malpractice and breach of
contract in connection with, <u>inter alia</u>, the Debtors' bankruptcy
cases.  In particular, they alleged that the Firm failed to advise
the Stradas that the Debtors would continue to operate as an on-
going business in chapter 11 (<u>id.</u>, at ¶ 41), that the Stradas would
lose control of the Debtors upon the filing of the chapter 7 cases,
(i<u>d.</u>, at ¶ 42), and that the chapter 7 trustee could sue the
Stradas.  (<u>Id.</u>, at ¶ 43.)

During the consultations prior to bankruptcy, the Stradas had
also informed the Firm that they or Strada Associates or M.A.R.S.
held title to four parcels of real estate,[2] and these critical
assets had to be protected and preserved under their individual
control.  (<u>Id.</u>, at ¶¶ 48-52, 56.)  The Firm advised the Stradas
that the Studio Parcel would be sold in the chapter 7 case.  They
sought assurances from Rich that they could purchase the Studio
Parcel from the trustee at the appraised value, and Rich responded
that they "almost certainly" could. (<u>Id.</u>, at ¶¶ 57-59.)  Despite
Rich's assurances, the trustee sold the Studio Parcel at a public
auction for $650,000.00, far in excess of the $250,000.00 appraised

---

[2]    Strada Associates owned the parcel that housed Robert's design studio (the
"Studio Parcel") (State Court Complaint, ¶ 52.)  Strada Associates also held title to a one acre
parcel in Amagansett ("Backacre"), but Robert and Michelle had paid the down payment and
made all of the mortgage payments from their personal funds.  (<u>Id.</u>, at ¶¶ 51, 53.)  At their
request, Rich prepared documents to transfer title to Backacre from Strada Associates to Robert
and Michelle.  (<u>Id.</u>, at ¶ 55.)

value and well beyond the Stradas' financial ability to outbid.
(<u>Id.</u>, at ¶¶ 70-80.)  In addition, the trustee sued the Stradas, and
they ultimately agreed to settle for $475,000.00 rather than face
a $1.5 million judgment.  (<u>Id.</u>, at ¶¶ 81-83.)

The State Court Complaint included several other charges.  The
State Court Plaintiffs alleged that the Firm did not prepare Robert
adequately for the section 341 meeting of creditors.  (<u>Id.</u>, at ¶¶
65-69.)  In addition, the Firm never advised the State Court
Plaintiffs of their rights, including their right to seek to
convert the Debtors' chapter 7 cases to chapter 11.  (<u>Id.</u>, at ¶
86.).  Finally, the State Court Plaintiffs contended that the
bankruptcy filings triggered loan defaults by 25 Power Drive and 31
Industrial Circle, and Robert, both Stradas and/or Strada/PA had
guaranteed these loans.  (<u>Id.</u>, at ¶¶ 84-85.)

The State Court Complaint included only two causes of action.
First, the Firm was negligent.  (<u>Id.</u>, at ¶¶ 91-92.)  Second, the
same negligent conduct breached the retention agreement between the
State Court Plaintiffs and the Firm.  (<u>Id.</u>, at ¶¶ 94-100.)  The
causes of action lumped all of the State Court Plaintiffs together,
and failed to identify the claims being asserted on behalf of any
particular plaintiff.

6

## C.    The Shift to Bankruptcy Court

After the state court action was initiated, the battle moved to the bankruptcy court.  In March 2004, the Debtors amended their schedules to assert possible legal malpractice claims against the Firm, and in June 2004, filed a motion to compel the trustee to abandon the estates' interests in the newly scheduled claims.  The trustee opposed the abandonment motion, and the Court denied it.

The Firm subsequently entered into a settlement agreement with the trustee.  In exchange for a payment of $40,000.00, the trustee agreed to release the estates' claims asserted in the State Court Complaint, and file the necessary discontinuance in state court.  This time, State Court Plaintiffs objected.  They argued that the state court claims belonged, at least in part, to the Debtors personally rather than to their estates.

Both motions hinged on the same question -- who, as between the Debtors and their estates -- owned and controlled the malpractice claims.  The Court suggested that an adversary proceeding should be commenced by one of the parties to determine the answer, and the Plaintiffs commenced this adversary proceeding on or about October 29, 2004, for that purpose.

7

D.    **The Summary Judgment Motions**

The Plaintiffs filed a motion for summary judgment on or about January 12, 2005. (<u>See</u> <u>Plaintiffs' Motion</u>.)  In their motion, they read the State Court Complaint to assert four distinct claims of malpractice on behalf of the Debtors: (1) advising the Debtors to file under chapter 7 instead of chapter 11; (2) failing to advise the Debtors, after the petition date, to convert their chapter 7 cases to chapter 11; (3) failing to properly prepare Robert for the section 341 examination; and (4) failing to advise one of the Debtors (<u>i.e.</u>, Strada Associates) that its real property would be sold at public auction.  (<u>Plaintiffs' Motion</u>, ¶ 10.)  The Plaintiffs contended that the four claims were "deeply rooted" in the Debtors' pre-bankruptcy activities, and hence, were property of their estates.  (<u>Id.</u>, at ¶¶ 32-59.)

The Debtors' cross-moved for summary judgment, taking a more restricted view of their claims.  (<u>See</u> <u>Debtors' Opposition to Plaintiffs' Motion for Summary Judgment and Cross-Motion for Summary Judgment</u>, dated April 15, 2005 ("<u>Debtors' Opposition</u>")(ECF Doc. # 16).)  The Debtors' divided their claims into three categories.  "Prepetition Malpractice" referred to, "<u>inter alia</u>, Plaintiffs failing to adequately advise Debtors regarding their ability to reorganize and their ability to file under Chapter 11 of the Bankruptcy Code."  (<u>Debtors' Opposition</u>, at ¶ 8; <u>accord</u>

8

<u>Certification of Robert Strada in Opposition to Plaintiffs' Motion
for Summary Judgment and in Support of Debtors' Cross-Motion for
Summary Judgment</u>, dated April 15, 2004 ("<u>Strada Certification</u>"), at
¶ 8)(ECF Doc. # 16); <u>Counter Statement, Pursuant to Local Rule
7056-1, of Defendants Strada Design Associates, Inc. and Strada
Design of PA, Inc.</u>, dated April 15, 2005 ("<u>Debtors' 7056-1
Statement</u>"), at § B, ¶ 3)(ECF Doc. # 15).)  "Filing Malpractice"
referred to the "alleged legal malpractice committed by Plaintiffs
by filing the Debtors' bankruptcy petitions under Chapter 7 of the
Bankruptcy Code."  (<u>Debtors' Opposition</u>, at ¶ 9; <u>accord</u> <u>Strada
Certification</u>, at ¶ 9; <u>Debtors' 7056-1 Statement</u>, at § B, ¶ 4.)
Lastly, "Post-petition Malpractice" referred to, "<u>inter alia</u>,
Plaintiffs failing to adequately advise Debtors regarding their
ability to reorganize by converting the Chapter 7 cases to cases
under Chapter 11 of the Bankruptcy Code."  (<u>Debtors' Opposition</u>, at
¶ 10; <u>accord</u> <u>Strada Certification</u>, at ¶ 10; <u>Debtors' 7056-1
Statement</u>, at § B, ¶ 5.)  The Debtors contended that none of the
claims ripened into a cause of action until after the filing of the
cases, and therefore, none are property of their respective
estates.

The Court is inclined to accept the Debtors' characterization
of their claims, and notwithstanding the use of "<u>inter alia</u>," read
the Debtors' causes of action to be limited to the Prepetition,

9

Filing and Post-petition Malpractice Claims specifically described in their submissions.  The State Court Complaint alleged two causes of action that lumped all of the State Court Plaintiffs together, and failed to differentiate among their claims and injuries.  Furthermore, while some of the allegations in the State Court Complaint plainly related to a particular State Court Plaintiff, other allegations were less precise.  The Debtors' are in a better position to know their claims.  To avoid future surprises, however, their description should serve to limit the scope of their allegations.

**DISCUSSION**

**A.   Introduction**

Under 11 U.S.C. § 541(a), the filing of a bankruptcy petition creates an estate, and with certain exceptions, the "property of the estate" includes "all legal or equitable interests of the debtor in property <u>as of</u> the commencement of the case." (Emphasis added.)[3]  State law normally determines the extent of the debtor's

---

[3]      Section 541(a) states in pertinent part:

   "The commencement of a case under section 301, 302, or 303 of this title creates an estate.  Such estate is comprised of all the following property, wherever located and by whomever held:

   (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case . . . .

10

interest in property. <u>Butner v. United States</u>, 440 U.S. 48, 55
(1979); <u>In re Canney</u>, 284 F.3d 362, 370 (2d Cir. 2002); <u>Morton v.
National Bank of New York City (In re Morton),</u>, 866 F.2d 561, 563
(2d Cir. 1989). Bankruptcy law determines whether that interest is
property of the estate. <u>In re Prudential Lines, Inc.</u>, 928 F.2d
565, 569 (2d Cir.), <u>cert. denied</u>, 502 U.S. 821 (1991);
<u>Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re
Crysen/Montenay Energy Co.)</u>, 902 F.2d 1098, 1101 (2d Cir. 1990); <u>In
re Haedo</u>, 211 B.R. 149, 151 (Bankr. S.D.N.Y. 1997). "Property of
the estate" is broadly construed, <u>United States v. Whiting Pools</u>,
462 U.S. 198, 204-05 (1983); <u>see</u> <u>In re Mid-Island Hosp., Inc.</u>, 276
F.3d 123, 128 (2d Cir. 2002), in order to bring the debtor's
property within the bankruptcy court's jurisdiction and the
umbrella of protections granted by the Bankruptcy Code, and to
promote the goal of equality of distribution. 5 ALAN N. RESNICK &
HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 541.01, at 541-7 (15th ed. rev.
2005).

Without doubt, causes of action that accrue under state law
prior to the filing of a bankruptcy petition become "property of

----

....

(7) Any interest in property that the estate acquires after the
commencement of the case.

the estate." In addition, causes of action that accrue as a result
of the filing are "property of the estate." Johnson, Blakely,
Pope, Bokor, Ruppel & Burns, P.A. v. Alverez (In re Alvarez), 224
F.3d 1273, 1278 (11th Cir. 2000), cert. denied, 531 U.S. 1146
(2001); Jones v. Hyatt Legal Servs. (In re Dow), 132 B.R. 853, 860
(Bankr. S.D. Ohio 1991).

This conclusion follows from a comparison between § 541(a)(1)
and § 541(a)(7), both quoted in the preceding footnote. Section
541(a)(1) deals with the debtor's interests "as of" the
commencement of the case. Section 541(a)(7) defines "property of
the estate" to include "[a]ny interest in property that the estate
acquires after the commencement of the case." (Emphasis added.)
The latter provision plainly addresses interests that come into
being after the petition is filed. If § 541(a)(1) was limited to
pre-petition interests, any interests that arose at the time of
filing would slip between the two subsections, and not become
"property of the estate." Section 541(a)(1), therefore,
necessarily covers pre-petition interests as well as those that
arise simultaneously with the commencement of the case.

A comparison with other provisions of the Bankruptcy Code
confirms that § 541(a)(1) is not limited to interests that arise or
are created pre-petition. When Congress sought to refer to purely

pre-petition rights, it knew how to express itself.  For example,
§ 365(g) states that a rejection damage claim is treated as if it
arose "immediately before the date of the filing of the petition."
Similarly, § 348 treats a claim arising in a chapter 11, 12 or 13
case that is subsequently converted as if it arose "immediately
before the date of the filing of the petition."  <u>Accord</u> 11 U.S.C.
§ 547(e)(2)(C)(treating certain unperfected interests as having
been perfected "immediately before the date of the filing of the
petition."); § 548(d)(1)(same).  In contrast, § 541(a)(1) refers to
the debtor's interests "as of the commencement of the case" rather
than "immediately before the date of the filing of the petition."

     Although the accrual date for state law purposes is important,
it is not always critical in deciding whether a cause of action
will be "property of the estate."  Section 541(a) is not restricted
by state law concepts such as when a cause of action ripens or a
statute of limitations begins to run, and "property of the estate"
may include claims that were inchoate on the petition date.  The
seminal case of <u>Segal v. Rochelle</u>, 382 U.S. 375 (1966), illustrates
this principle.  There, the bankrupts filed petitions under the
former bankruptcy act on September 27, 1961.  After the close of
the calendar year, and, therefore, after the petition date, the
bankrupts applied for and obtained loss carry-back refunds for
prior years based upon losses suffered during 1961 but prior to the

petition date.   The trustee contended that the loss carry-backs
were estate property and should be turned over to him.   The
bankrupts maintained that the right to the loss carry-back refunds
arose post-petition after the close of the 1961 tax year, and
belonged to them.

Agreeing with the trustee, the Supreme Court ruled that the
refund claim, inchoate on the petition date "is sufficiently rooted
in the pre-bankruptcy past and so little entangled with the
bankrupts' ability to make an unencumbered fresh start that it
should be regarded as 'property' under § 70a(5)."   Id. at 380.
Furthermore, even though the refund could not be claimed until
after the end of the tax year, and subsequent events during the
remainder of the tax year might change the amount of the refund,
"postponed enjoyment does not disqualify an interest as
'property.'"   Id.

Segal is still good law.   See H. R. REP. NO. 95-595, at 367
(1977); S. REP. NO. 95-989, at 82 (1978).   Furthermore, although
Segal involved issues of accrual under federal tax law rather than
state law, its rationale applies to the latter type of case as
well.   Accordingly, a cause of action will be "property of the
estate" if it has sufficient roots in the debtor's pre-bankruptcy
activities and is not entangled with the debtor's "fresh start,"

14

regardless of when the claim accrues under state law or the statute of limitations begins to run.

**B.    The Debtors' Claims**

**1.    State Law**

The Pre-petition and Filing Malpractice Claims were fully accrued by the time that the petitions were filed, and those interests became "property of the estate."  Under New York law, a legal malpractice claim consists of four elements: (1) the existence of an attorney-client relationship, (2) negligence by the attorney, (3) proximate cause and, (4) damages.  <u>Hanlin v. Mitchelson</u>, 794 F.2d 834, 838 (2d Cir. 1986); <u>Steinfeld v. Marks</u>, No. 96 Civ. 0552, 1997 WL 563340, at *4 (S.D.N.Y. Sept. 8, 1997).  The cause of action accrues regardless of when the plaintiff discovers the injury.  <u>Shumsky v. Eisenstein</u>, 750 N.E.2d 67, 69 (N.Y. 2001)("An action to recover damages for legal malpractice accrues when the malpractice is committed . . . [and] 'not when the client discovered it.'")(quoting <u>Glamm v. Allen</u>, 439 N.E.2d 390, 394 (N.Y. 1982)).  Although discovery of the injury may affect when the statute of limitations starts to run, it does not affect the existence of the cause of action.

A cause of action for legal malpractice based on negligently advising a client to file a bankruptcy petition accrues, at the

latest, at the time the petition is filed.  See <u>Williams v. Stein</u>, 775 N.Y.S.2d 255, 255-56 (N.Y. App. Div. 2004).  At that point, all of the elements of the claim are present. Here, however, the Debtors contend that they did not suffer any injury until later, and hence, the cause of action could not have accrued before then.

The argument ignores the Debtors' own theory of their case. The crux of their claim is that they could have worked out their financial problems in chapter 11 or otherwise, and continued to operate as on-going businesses. (<u>See</u> <u>State Court Complaint</u>, at ¶¶ 22, 26-28, 30, 32, 35, 41; <u>Debtors' Opposition</u>, at ¶ 6.)  Had they done so, they could have preserved the businesses as going concerns.  Once they filed chapter 7 petitions, however, the United States Trustee was required to appoint a trustee for the estates, 11 U.S.C. § 701(a)(1), and the chapter 7 trustee was obligated to liquidate their assets.  11 U.S.C. § 704(1)("The trustee shall . . . collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest.")

The filing of chapter 7 petitions caused the harm complained of by the Debtors.  It decreased their enterprise values, as measured by the difference between the going concern and liquidation values of each Debtor.  The Debtors' implicitly concede

16

the point by asserting that the failure to convert the cases to chapter 11, without more, constituted malpractice. Just being in chapter 7 was sufficient harm itself to impose a duty on the Firm to rectify it.

Unlike the first two claims, the acts and omissions underlying the Post-petition Malpractice Claim occurred after the filings. Nevertheless, the failure to convert the cases to chapter 11 did not give rise to an independent, post-petition tort. Where the debtor alleges that his lawyer negligently advised him to file chapter 7 rather than chapter 11, and separately alleges that the lawyer failed to convert the case to chapter 11, the claim of post-filing malpractice "is more aptly described as simply a failure to seek to remedy the initial negligent act or ameliorate the harm, rather than as an independent act of negligence." In re Alvarez, 224 F.3d at 1278 n.10 (decided under Florida law). The Debtors have not cited any New York authorities that contradict this conclusion. But even if they could, the time when the claim accrued under state law is immaterial for the reasons discussed in the next section.

## 2. Bankruptcy Law

Assuming that none of the three malpractice claims accrued under New York law "as of" the filing date, they still have

17

sufficient roots in the Debtors' pre-bankruptcy activities to
warrant inclusion in their estates. <u>Alvarez</u>, a case "on all fours"
with the Debtors' cases, explains why. There, the debtor alleged
that his bankruptcy attorneys committed malpractice by disregarding
his instructions and filing a chapter 7 case instead of a chapter
11 case. <u>Id.</u> at 1275. He contended that as a result, he lost
control and ownership of substantial assets and suffered other
damages. <u>Id.</u>

The issue before the court was the same as here – whether the
malpractice claim belonged to the debtor individually, or to his
estate. <u>Id.</u> The Court first analyzed the claim under Florida law,
and concluded that the malpractice claim accrued "at the moment"
that the chapter 7 petition was filed. <u>Id.</u> at 1277-78. Turning to
federal law, the Court concluded that the legal malpractice claim
was included within the "property of the estate":

> Applying the rationale of <u>Segal</u> to the instant case, we
> conclude that Alvarez's legal malpractice cause of action
> is also sufficiently rooted in his pre-bankruptcy past
> that it should be considered property of Alvarez as of
> the commencement of his bankruptcy case, and thus
> property of his estate. Alvarez established an attorney-
> client relationship with Johnson Blakely prior to his
> filing for bankruptcy, and this cause of action arises
> directly out of Alvarez's interactions with the firm
> prior to filing-<u>i.e.</u> Alvarez's instructions to Johnson
> Blakely to file Chapter 11 and the firm's alleged
> disregard of those instructions-<u>i.e.</u> the preparation and
> filing instead of a Chapter 7 petition. Simultaneous
> with the filing, Alvarez suffered significant harm from
> the firm's alleged negligence, <u>i.e.</u> the loss of control
> of assets. The claim in the instant case is even more

firmly "rooted in the pre-bankruptcy past" than the claim
in <u>Segal</u>.

<u>Id.</u> at 1279; <u>accord</u> <u>In re Tomaiolo</u>, 205 B.R. 10, 14-16 (Bankr. D.
Mass. 1997)(alleged negligent legal advice to file bankruptcy
petition, the failure to cure the errors and omissions relative to
the petition and the failure to advise the debtor of his rights,
duties and obligations had pre-petition roots and were property of
the estate even though they may not have accrued under state law
prior to the time of the filing of the petition), <u>aff'd</u>, No. 90-
40350, 2002 WL 226133 (D. Mass. 2002).

Similarly, the Pre-petition and Filing Malpractice Claims had
all of their roots in the Debtors' pre-bankruptcy past.  The
Debtors consulted with and retained the Firm prior to the petition
date.  The allegations of lack of due care, culminating in the
filing of the chapter 7 petitions, relate to the Firm's pre-
petition advice.  Finally, the Debtors suffered their injury – the
decline in their enterprise value – at the moment that the
petitions were file.

The Post-petition Malpractice Claim is also "property of the
estate" for the reasons explained in <u>In re O'Dowd</u>.  <u>O'Dowd v.
Trueger (In re O'Dowd)</u>, 233 F.3d 197 (3d Cir. 2000).  There, the
debtor hired an attorney (Attorney # 1) to handle a real estate
transaction that closed pre-petition.  After the closing, the

19

debtor learned of problems with the property. _Id._ at 199. She
subsequently filed a chapter 11 case, retained another attorney
(Attorney # 2), and sued Attorney # 1 for legal malpractice (the
"First Malpractice Action") in connection with the pre-petition
real estate transaction. _Id._ at 200.

The case was eventually converted to chapter 7. During the
chapter 7 case, the debtor hired Attorney # 3 to replace Attorney
# 2, but the chapter 7 trustee took over the prosecution of the
First Malpractice Action, and moved for court approval to settle it
for $10,000.00. _Id._ At the debtor's behest, the bankruptcy court
rejected the settlement. _Id._ Instead, it authorized the debtor to
prosecute the action, directed her to turnover the first $10,000.00
of any net proceeds to the trustee, and allowed her to retain the
balance. _Id._ The debtor hired Attorney # 4, and the litigation
was later settled for an undisclosed amount. _Id._

After the settlement, the debtor discovered that Attorney # 2
had failed to assert a number of claims against Attorney # 1 in the
First Malpractice Action. By this time, the claims were time-
barred. _Id._ As a result, she brought a second action (the "Second
Malpractice Action") against Attorney # 2 and Attorney # 3 in state
court based on the failure to plead the omitted claims. _Id._ at
200-01. Attorney # 3 moved in state court to dismiss the complaint

20

on the ground that the claim belonged to the debtor's estate, and
state court ordered the debtor to seek a determination of the issue
in the bankruptcy court.    Id. at 201.

The bankruptcy court ruled that the claims asserted in the
Second Malpractice Action were sufficiently rooted in the debtor's
pre-bankruptcy past to be considered "property of the estate" under
§ 541(a)(1).    Id.    The bankruptcy court also ruled, in the
alternative, that the malpractice claim became "property of the
estate" under § 541(a)(7).    Id.    On appeal, the district court
rejected the § 541(a)(1) analysis but affirmed under § 541(a)(7).
Id.

The Court of Appeals also affirmed under § 541(a)(7).[4]    It
initially concluded that the claims asserted in the Second
Malpractice Action accrued post-petition.    Id. at 203.
Nevertheless, the gravamen of the Second Malpractice Action was
that the defendants' negligence diminished the value of the First
Malpractice Action.    Id. at 203.    It was "conceptually impossible"
to sever the two malpractice actions, and all of the malpractice

---

[4]        Although the Court of Appeals declined to reach the § 541(a)(1) issue, dicta in the
opinion supported the bankruptcy court's determination.  The Court noted that the Second
Malpractice Action was based on the mishandling of the First Malpractice Action, and had pre-
bankruptcy roots.  "Ordinarily, the degree of the nexus between a suit based on pre-petition
conduct and a derivative post-petition malpractice action will determine whether the latter
constitutes property of the estate under § 541(a)(1)."  O'Dowd, 233 F.3d at 201 n.6.

claims were directly traceable to the debtor's pre-bankruptcy dealings with Attorney # 1.  _Id._ at 203-04.  In addition, the estate – as opposed to the debtor – suffered the injury resulting from the negligent handling of the First Malpractice Action.  _Id._ at 204.  Accordingly, the Second Malpractice Action, which accrued after the commencement of the case, became "property of the estate" under § 541(a)(1).  _Id._

Here, the Post-petition Malpractice Claim charges that the Firm failed to correct the injuries caused by the filing of the chapter 7 petitions.  As noted, the Pre-petition and Filing Malpractice Claims accrued "as of" the commencement of the case, diminished the Debtors' enterprise value, and had sufficient pre-bankruptcy roots to be included in "property of the estate."  The Post-petition Malpractice Claim is derivative of these two claims, and was intended to remedy the injuries that they caused.  Hence, the Post-petition Malpractice Claim is included in the Debtors' estate under the provisions of § 541(a)(7).  Alternatively, it is included under § 541(a)(1) because of its roots to the Debtors' pre-bankruptcy activities and its close nexus to the alleged pre-petition malpractice.

Finally, this case does not implicate any concerns regarding the Debtors' "fresh start."  The "fresh start" is accomplished

22

through the issuance of a discharge that relieves a debtor of most pre-petition liabilities.  <u>See</u> <u>Detrano v. Detrano</u>, 326 F.3d 319, 322 (2d Cir. 2003).  Only individuals receive discharges in chapter 7 cases.  11 U.S.C. § 727(a)(1)("The court shall grant the debtor a discharge, unless . . . the debtor is not an individual.").  The Debtors are corporations, and are not entitled to a discharge or a fresh start.

Accordingly, the Plaintiffs' motion for summary judgment is granted, and the Debtors' cross-motion for summary judgment is denied.  This determination is not intended to affect the rights of the other State Court Plaintiffs who are not parties to this adversary proceeding.  The plaintiffs are directed to settle a proposed judgment consistent with this opinion.

So ordered.

Dated:    New York, New York
          June 10, 2005

                              /s/ *Stuart M. Bernstein*
                              STUART M. BERNSTEIN
                         Chief United States Bankruptcy Judge